IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DIXIE J. LEWANDOWSKI,<br><br>        Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner, Social<br>Security Administration,<br><br>        Defendant. | No. CV 07-6263-HU<br><br>FINDINGS AND<br>RECOMMENDATION |

John E. Haapala Jr.
96 E. Broadway, Suite 5
Eugene, Oregon 97401
    Attorney for plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104
    Attorneys for defendant

FINDINGS AND RECOMMENDATION Page 1

HUBEL, Magistrate Judge:

Dixie Lewandowski brings this action pursuant to 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act.

## Procedural Background

Ms. Lewandowski filed an application for benefits on November 17, 2004, with a protected filing date of October 18, 2004. She alleges disability since May 1, 1996, from anxiety, Obsessive Compulsive Disorder (OCD), Post Traumatic Stress Disorder (PTSD), and panic attacks. Her application was denied initially and on reconsideration. A hearing was held on December 15, 2006, before Administrative Law Judge (ALJ) William L. Stewart, Jr., at which Ms. Lewandowski was assisted by a non-attorney representative, Melissa Mona. On March 30, 2007, the ALJ issued a decision finding Ms. Lewandowski not disabled. On July 16, 2007, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

Ms. Lewandowski was 34 years old at the time of the alleged onset of disability and 45 years old at the time of the ALJ's decision. She has a 10th grade education. She has no past relevant work.

## Medical Evidence

Ms. Lewandowski received an initial assessment at Lane County Mental Health on December 9, 2002, but treatment was terminated on

FINDINGS AND RECOMMENDATION Page 2

February 12, 2003, after Ms. Lewandowski failed to appear for subsequent appointments. Tr. 128-29. She commenced treatment at White Bird Clinic in Eugene, Oregon in October 2004. Tr. 134-36. She was seen twice by Jim Newhall, M.D., on October 19, 2004 and on November 2, 2004. Tr. 132, 133. She was diagnosed with depression/anxiety and PTSD. Id.

At the November 2, 2004 visit to Dr. Newhall, Ms. Lewandowski complained of numbness and weakness of the right hand. Tr. 132. Examination revealed scars on her right wrist, but strength was full and equal. Id.

On December 11, 2004, Ms. Lewandowski was given a physical examination by Kurt Brewster, M.D., an internist, on behalf of Disability Determination Services. Tr. 138. Ms. Lewandowski reported a history of numbness and weakness in her right hand, of at least 10 years duration, which she attributed to a dog bite on the right wrist when she was a child. Tr. 139. She also reported memory lapses due to a significant history of physical abuse, including head trauma, as well as anxiety and PTSD. Id.

Upon examination, Dr. Brewster found no evidence of thenar atrophy, "which one would expect with longstanding median nerve compression." Tr. 143. He also found that Ms. Lewandowski had patterns of numbness that "correspond over multiple dermatomal and peripheral nerve areas, while sparing some that would be expected." Id. Overall, Dr. Brewster found no significant fine motor abnormality, and no objective signs to support Ms. Lewandowski's reports of numbness and weakness, other than decreased grip

FINDINGS AND RECOMMENDATION Page 3

strength after repetitive motion. Id. Dr. Brewster wrote that the decreased grip strength was variable and "in itself questionable." Tr. 142-43.

Dr. Brewster noted that although Ms. Lewandowski related at least a 10-year history of hand and arm pain and numbness, "[f]or the duration and severity alleged by the claimant, she has sought minimal medical care and no interventions. ... Claimant states she was seen by a physician who offered her solely a diagnosis and no treatment plan at all. This history does not appear credible and raises questions about other information given during exam." Tr. 142.

Dr. Brewster thought it probable that Ms. Lewandowski's "psychological issues contribute to her perception of pain and function and assessment in this area is recommended." Tr. 143. Dr. Brewster recorded Ms. Lewandowski's complaint that she was unable to stand more than one and a half hours a day, but concluded, "there does not appear to be a physiologic reason for this." Id.

On December 29, 2004, Ms. Lewandowski was given a psychodiagnostic evaluation on behalf of Disability Determination Services by Alison Prescott, Ph.D. Tr. 145. Ms. Lewandowski reported physical abuse by her father, former husband and boyfriends that caused her severe anxiety. Id. She was currently staying with a male friend in exchange for housecleaning. Tr. 146. She said she had previously worked for very brief periods as a housekeeper and motel maid, and sold tickets at a fair for a week in July 2004, but had never had a job lasting more than three

FINDINGS AND RECOMMENDATION Page 4

months. Id. She was taking Paxil and trazodone. Id. Ms. Lewandowski said she did not like being around people, and got panic symptoms upon going out. Id. Her sleep was disrupted by nightmares and flashbacks, and she said she sometimes heard the voice of her dead boyfriend. Id.

When asked about her alcohol and drug history, Ms. Lewandowski said she had an alcohol problem about 10 years earlier, but now drank only occasionally and never excessively. Tr. 147. She said she used marijuana in her 20s, but had not used in years. Id.

She reported that she cooked simple meals, read magazines, watched TV, went grocery shopping every two weeks, and did household chores every day. She did not socialize with anyone outside the house, although she used the phone on a regular basis. Id. She took a nap every day from about 2 p.m. to about 5 p.m. Id. She had been working as a bell ringer for Salvation Army and sometimes enjoyed it, as the elderly people "put me in a good mood." Id.

Her affect was "very agitated and dysphoric," and she "sobbed throughout the interview." Id. She appeared to be very depressed, and endorsed symptoms such as feelings of worthlessness, sadness, self blame, loss of energy, fatigue, appetite and sleep disruption, indecisiveness, and irritability. Id. However, she showed good short term memory. Id. She appeared to be of low average intellectual functioning. Tr. 148. Dr. Prescott's diagnoses were Major Depressive Disorder, Recurrent; Panic Disorder with Agoraphobia; PTSD; and Personality Disorder Not Otherwise Specified

FINDINGS AND RECOMMENDATION Page 5

(NOS). Id.

Reviewing psychologist Dorothy Anderson reviewed Ms. Lewandowski's records and completed a Mental Residual Functional Capacity Assessment, tr. 150-53,[1] opining that Ms. Lewandowski was moderately limited in her ability to 1) understand and remember detailed instructions; 2) carry out detailed instructions; 3) maintain attention and concentration for extended periods; 4) work in coordination with or proximity to others; 5) get along with coworkers or peers; and 6) set realistic goals or make plans independently of others. Dr. Anderson thought Ms. Lewandowski was markedly limited in the ability to interact appropriately with the general public. Tr. 151. In Dr. Anderson's opinion, Ms. Lewandowski had Major Depressive Disorder, Recurrent; Anxiety Disorder with Agoraphobia; and Personality Disorder, NOS. Tr. 157, 159, 161. Dr. Anderson thought Ms. Lewandowski had moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. Tr. 164. On February 11, 2005, Frank Lahman, Ph.D., performed another records review in which he agreed with Dr. Anderson. Tr. 168-69.

In March 2005, Ms. Lewandowski began treatment with River Road Medical Group. Tr. 179-185. A chart note dated March 31, 2005 from Patricia Buchanan, M.D., records complaints of anxiety and

---

[1] The document is dated "01/12/2," so it is impossible to ascertain the date of the assessment from the document itself, but the accompanying Psychiatric Review Technique, also completed by Dr. Anderson, is dated "1/12/05," so presumably the assessment was also done on January 12, 2005.

FINDINGS AND RECOMMENDATION Page 6

depression. Tr. 184. Dr. Buchanan wrote that Ms. Lewandowski cried often during the interview. Id. She also complained of dental pain. Id. Dr. Buchanan prescribed BuSpar for the depression and Vicodin for pain. Id. Ms. Lewandowski obtained a refill of the Vicodin on April 14, 2005. Id.

On April 22, 2005, Ms. Lewandowski saw Dr. Buchanan for elevated blood pressure and depression. Tr. 185. She reported that her depression was much better on the BuSpar, and that she had no side effects. Id. She was started on lisinopril and continued on the BuSpar. Id. On May 2, 2005, her Vicodin prescription was renewed. Id.

In April 2005, Ms. Lewandowski began treatment at Options Counseling Services. Tr. 191, 217. She requested medication management and therapy for "constant worrying, not being able to slow down, and hearing voices." Tr. 217. She was prescribed Seroquel, Lorazepam, and Risperidol. Tr. 228. Her first individual therapy session was on June 16, 2005. Id. Ms. Lewandowski did not show up for her next three appointments. Tr. 226, 227. She had another individual therapy session on July 20, 2005. Tr. 225. She did not show up for her appointment on August 23, 2005, and apparently did not continue treatment after that. Tr. 224.

On May 20, 2005, Ms. Lewandowski saw Dr. Buchanan for continuing tooth pain. Tr. 182. Examination of her mouth showed badly deteriorated teeth and obvious gum irritation, but no obvious infection. Id. Dr. Buchanan noted that Ms. Lewandowski was scheduled for extraction of three teeth on August 4. Id. She was

FINDINGS AND RECOMMENDATION Page 7

prescribed Vicodin. Id. On July 15, 2005, she was seen for dental abscesses, and treated by a physician's assistant with Amoxil and Vicodin. Tr. 183. However, she was told there would be no refills of pain medication and was advised to obtain "definitive resolution of her dental problems." Id.

On September 13, 2005, Ms. Lewandowski was seen for complaints of neck pain. Tr. 183. Ms. Lewandowski reported that she thought she injured her neck while helping a friend move. Id. She requested pain medication. Id. She was advised to use ice and heat, and given samples of naproxen, Flexeril, and Vicodin. Tr. 180.

In October 2005, Ms. Lewandowski was seen for complaints of knee pain, with no mention of whether it was one or both knees. Tr. 180. Examination of the right knee was insignificant. Id. An x-ray of the left knee on October 18, 2005 showed no abnormality; skeletal structures were intact and there was no destructive process. Tr. 189.

On November 13, 2005, Ms. Lewandowski was seen by Hans Notenboom, M.D., in the emergency room of Sacred Heart Medical Center. Tr. 200-01. Dr. Notenboom wrote that Ms. Lewandowski reported being out with a friend, drinking and smoking, tr. 200, and that "she seems a little bit intoxicated." Tr. 201. She complained initially of sore throat, which appeared to be the result of excessive smoking and drinking. Subsequently, she complained of "overall body pain," including epigastric pain and an episode of vomiting with blood in it two months earlier. Id. However, Ms. Lewandowski refused further workup and left the

FINDINGS AND RECOMMENDATION Page 8

emergency room. Dr. Notenboom's clinical impressions were viral syndrome, pharyngitis, tobaccoism, mild alcohol intoxication, and abdominal pain with probable gastritis. Id.

On January 6, 2006, Ms. Lewandowski was again seen in the emergency room. Tr. 197. She reported a history of bipolar disorder and anxiety. Id. Sarah Coleman, M.D., wrote, "It sounds like she has a significant alcohol history as well." Id. Ms. Lewandowski had come to the hospital by ambulance, saying she was unable to pick up Ativan that had been prescribed for her until later in the day, and asked that Dr. Coleman "give her something to help her sleep." Id. Dr. Coleman gave her a dose of Ativan. Tr. 198.

**Lay Witness Testimony**

Sharon L. Born, a friend of Ms. Lewandowski's, submitted a statement dated December 19, 2004. Tr. 93. Ms. Born stated that she had known Ms. Lewandowski for three years. Id. She said Ms. Lewandowski "cleans and watches TV all day," id., but also said she only did "minimal housework." Tr. 95. Ms. Born stated that Ms. Lewandowski was unable to use her right hand to prepare meals. Id.

Ms. Born reported that Ms. Lewandowski went outside about five times a week, using public transportation and going out alone. Tr. 96. She was able to shop for food twice a month for about half an hour each time, pay bills, count change, use a checkbook, and handle a savings account. Id. Ms. Born reported that Ms. Lewandowski visited her about three times a week, to watch TV and talk, and that Ms. Lewandowski also talked on the phone. Id. She did not need to be accompanied to appointments, and had no problems

FINDINGS AND RECOMMENDATION Page 9

getting along with family friends, neighbors, and others. Id. Ms. Born related that they had worked together at the fair and that Ms. Lewandowski had a "major anxiety attack" and had to go home. Tr. 100.

Ms. Lewandowski's roommate of two years, Harold Willits, submitted a statement dated June 2, 2006. Tr. 123. He reported that he had to "constantly remind her to take her medications," and that she had "problems dealing with groups of people when I take her shopping." Id. Mr. Willits said he had to "motivate her into taking care of personal hygiene constantly." Id.

### Hearing Testimony

At the time of the hearing, Ms. Lewandowski had a temporary job, working about 20 hours a week, as a Salvation Army bell ringer. Tr. 232-33. Ms. Lewandowski testified that she hardly slept at night, but took a nap every day. Tr. 237. Her "mind races and thinks about things and situation[s] I'm in and I just worry a lot." Tr. 238. She also had problems with her short term memory. Tr. 238. She had panic attacks when she was around a lot of people, tr. 239, which caused her to sweat and forget where she was. Id. When she felt someone was criticizing her, she got "very angry and upset" and said things she could not remember afterward. Id. She took Klonopin for panic attacks two or three times a day, tr. 240, but said her anxiety was so high that "I just do everything fast. I hardly ever sit down. I hardly sleep." Id. She had "really bad" headaches that lasted up to two hours, three times a week or more. Tr. 241-42. She said her hands had been "going numb for the last

FINDINGS AND RECOMMENDATION Page 10

month or so." Tr. 242.

A vocational expert (VE), Kay Wise, also testified. Tr. 249. The ALJ asked her to consider a hypothetical individual with no relevant work experience, of Ms. Lewandowski's educational level and age, who was unable to 1) maintain attention and concentration for simple, routine tasks more than two hours at a time, 2) follow detailed instructions, 3) interact appropriately with the public or tolerate crowded conditions, and 4) consistently engage in cooperative team work. Tr. 251-52. The VE opined that such a person could work as a sorter of soft goods, an office cleaner or motel maid, and a home attendant or home companion. Tr. 252-53.

**ALJ's Decision**

The ALJ found that Ms. Lewandowski had severe impairments of depression; anxiety disorder identified in various ways (possible PTSD, possible panic attacks and agoraphobia); personality disorder; history of headaches; possible obsessive compulsive disorder (OCD); and history of alcohol abuse. Tr. 14. But he found Ms. Lewandowski's alleged physical impairments of leg pain, abdominal pain, and pain and numbness in her hands not supported by objective clinical evidence. Id.

The ALJ concluded that Ms. Lewandowski's impairments caused no difficulty with activities of daily living, but caused moderate limitations in social functioning and in concentration, persistence or pace. Id. He concluded that there were no physical limitations to her residual functional capacity, but that there were limitations on her ability to maintain attention and concentration

FINDINGS AND RECOMMENDATION Page 11

for prolonged periods; follow detailed instructions; interact appropriately with the general public; tolerate crowds; engage in cooperative teamwork endeavors; and independently formulate plans and goals. Id.

The ALJ did not find Ms. Lewandowski's testimony entirely credible, citing evidence that she was able to go out in public if she wanted to (stating at the ER in November 2005 that she had spent the evening drinking and smoking with a friend, tr. 200-01; telling Dr. Prescott she took the bus and went to the grocery store, tr. 147; and working as a bell ringer, a job she said "put[s] me in a good mood," and that is performed in public, tr. 147). Tr. 16. The ALJ also noted that while one of Ms. Lewandowski's friends reported that she had problems with groups of people, self-isolation, and memory difficulty, another friend said she had no problems around others. Id.

The ALJ found discrepancies between Ms. Lewandowski's statement in December 2004 that she had been clean and sober for eight years, tr. 90, and other evidence that she continued to drink alcohol, see tr. 80 (asked when she last had a drink, Ms. Lewandowski laughed and said, "this morning because of stress."), and tr. 197 (ER admission in January 2006, with examiner noting that she reported "significant alcohol history"). Tr. 16.

The ALJ found the opinions of the reviewing psychologists consistent with the overall evidence. Tr. 16.

The ALJ accepted the VE's testimony and concluded that Ms. Lewandowski's residual functional capacity permitted her to work in

FINDINGS AND RECOMMENDATION Page 12

such occupations as sorter of soft goods, light office cleaner, home attendant, and motel maid/housekeeper. Tr. 17.

### Standard

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). In determining whether the Commissioner's findings are supported by substantial evidence, the court must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). However, the Commissioner's decision must be upheld even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The initial burden of proving disability rests on the claimant. Meanel, 172 F.3d at 1113; Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

FINDINGS AND RECOMMENDATION Page 13

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). This means an impairment must be medically determinable before it is considered disabling.

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

In step one, the Commissioner determines whether the claimant has engaged in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, the Commissioner goes to step two, to determine whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). That determination is governed by the "severity regulation," which provides:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

§§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step. Yuckert, 482 U.S. at 141.

In step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude

FINDINGS AND RECOMMENDATION Page 14

substantial gainful activity." <u>Yuckert</u>, 482 U.S. at 140-41. If a claimant's impairment meets or equals one of the listed impairments, he is considered disabled without consideration of her age, education or work experience. 20 C.F.R. s 404.1520(d), 416.920(d).

If the impairment is considered severe, but does not meet or equal a listed impairment, the Commissioner considers, at step four, whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can do so, he is not considered disabled. <u>Yuckert</u>, 482 U.S. at 141-42. If the claimant shows an inability to perform his past work, the burden shifts to the Commissioner to show, in step five, that the claimant has the residual functional capacity to do other work in consideration of the claimant's age, education and past work experience. <u>Yuckert</u>, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).

**Discussion**

1. <u>Failure to find wrist and leg pain severe</u>

Ms. Lewandowski asserts that the ALJ erred in failing to find that Ms. Lewandowski's alleged right hand pain and numbness, and knee pain, constituted severe impairments. This argument is unpersuasive. The ALJ found no objective clinical evidence to support Ms. Lewandowski's statements to doctors and testimony about pain in her knees and right hand and numbness of her right hand. This finding is based on substantial evidence in the record. See tr. 132 (November 2, 2004 note from Dr. Newhall finding strength in

FINDINGS AND RECOMMENDATION Page 15

hands full and equal); tr. 181 (chart note dated October 10, 2005 finding "normal insignificant knee exam" of right knee); tr. 189 (normal x-ray of left knee on October 18, 2005); tr. 143 (statement by Dr. Brewster in December 2004 that "there does not appear to be a physiologic reason for" Ms. Lewandowski's allegation of being able to stand only one and a half hours a day, and opinion that she could stand or walk six hours out of an eight hour day); tr. 142 (Dr. Brewster's note that his observations of decreased grip strength after repetitive motion "too variable to be useful," and reporting that Ms. Lewandowski was able to take off and tie her own shoes and pick up a paper clip from a flat surface, as well as write cursively without her handwriting appearing cramped, and that she reported being able to operate an ATM and write checks).

A claimant's testimony about pain may properly be disregarded if it is unsupported by medical evidence which supports the existence of such pain. Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991)(en banc). Here there is no evidence of a medical condition which could cause the claimed pain. I find no error by the ALJ here.

2.   Failure to find obesity a severe impairment

Ms. Lewandowski argues that the ALJ erred by failing to take into consideration, at any stage of the disability analysis, her obesity. The record shows that Ms. Lewandowski is five feet tall. Tr. 140. A medical chart note dated December 11, 2004 shows a weight of 166 pounds. Id. Dr. Prescott noted in the "mental status" part of her report that Ms. Lewandowski was "of short stature and

FINDINGS AND RECOMMENDATION Page 16

moderately obese," but this is not a medical diagnosis because Dr. Prescott is a psychologist. Ms. Lewandowski claims the evidence shows she gained 40 pounds over the next two years, but this is incorrect. The record shows that she told Dr. Prescott in December 2004 that she had "gained 40 pounds in two years," that is, in two years <u>before</u> December 2004. Tr. 146. The record does show that on March 31, 2005, Ms. Lewandowski's weight was recorded as 192 pounds, tr. 184; on April 22, 2005 as 193 pounds, tr. 185; and on May 20, 2005 as 190 pounds, tr. 182. But on September 13, 2005, her weight was 183 pounds. Tr. 183. The medical evidence does not reveal what Ms. Lewandowski's weight was after September 2005. On April 6, 2006, Ms. Lewandowski told a mental health practitioner that she was "currently trying to lose weight through diet and exercise." Tr. 215. On this record, it cannot be ascertained what Ms. Lewandowski's weight was in March 2007, when the ALJ made his decision.

Ms. Lewandowski's allegations of disability do not include obesity or limitations related to obesity. Tr. 71-72. The medical records do not indicate that Ms. Lewandowski made complaints to medical practitioners about limitations on her ability to work due to obesity, nor do they indicate that medical practitioners found that Ms. Lewandowski had limitations related to obesity. Accordingly, I find no error in the ALJ's failure to consider whether Ms. Lewandowski had a severe impairment of obesity.

3. <u>Rejection of Ms. Lewandowski's Testimony</u>

Ms. Lewandowski asserts that the ALJ failed to provide clear

FINDINGS AND RECOMMENDATION Page 17

and convincing reasons for rejecting her testimony.

Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).[2] The ALJ's findings must be sufficiently specific to allow a reviewing court to determine whether the ALJ rejected the claimant's testimony on permissible grounds, and did not do so arbitrarily. Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001).

As discussed above, I find no error in the ALJ's rejection of Ms. Lewandowski's testimony about pain and numbness in her right hand, and pain in her knees, because there are no objective clinical findings to support the existence of a condition that could cause these symptoms.

With respect to her mental limitations, Ms. Lewandowski asserts that the ALJ failed to provide clear and convincing reasons for rejecting her testimony that she needed help with taking medication, answering mail, cooking food, and arranging her own transportation; that she had a "complete inability to function" outside the house; and that she was afraid of people. I find this argument unpersuasive. The ALJ's credibility finding cited evidence inconsistent with these statements. The evidence included daily activities Ms. Lewandowski reported to Dr. Prescott (cooking,

---

[2] Dr. Brewster's observations could provide some indication of malingering, but the ALJ made no findings about the possibility of malingering.

FINDINGS AND RECOMMENDATION Page 18

taking care of a cat, reading magazines, doing household chores every day and keeping the house "very clean," going to her bell ringing volunteer job, going to the grocery store every two weeks, going to appointments, taking the bus, using the phone and managing money), tr. 147, and the observations of her friend Ms. Born, who stated that Ms. Lewandowski went out alone about five times a week, using public transportation, was able to pay bills, count change, use a checkbook, handle a savings account, and talk on the phone. Tr. 95. Ms. Born also reported that Ms. Lewandowski did not need to be accompanied to appointments and had no problems getting along with family, friends, neighbors, and others. Id. The ALJ's reasons for rejecting Ms. Lewandowski's testimony are clear and convincing, and based on substantial evidence in the record.

    4.   <u>Failure to include all alleged and diagnosed limitations in the hypothetical to the VE</u>

Ms. Lewandowski asserts that the ALJ erred in failing to include in the hypothetical offered to the VE all of her complaints. As discussed, the ALJ did not err in failing to include any physical limitations in his hypothetical to the VE because there is no clinical evidence to support Ms. Lewandowski's allegations of such limitations.

Ms. Lewandowski asserts that the ALJ "improperly dismissed examining and treating physician testimony, and therefore failed to include those diagnosed limitations in the hypothetical." Plaintiff's Memorandum, p. 13. But she has not identified the physician or the testimony; nor does she explain how the ALJ's

FINDINGS AND RECOMMENDATION Page 19

rejection of this unidentified testimony affected the ALJ's hypothetical to the VE. This argument is unpersuasive.

## Conclusion

I recommend that the decision of the Commissioner be affirmed.

## Scheduling Order

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due November 17, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date. If objections are filed, a response to the objections is due December 1, 2008, and the review of the Findings and Recommendation will go under advisement on that date.

Dated this  31st  day of  October, 2008.


                        /s/  Dennis James Hubel

                        Dennis James Hubel
                      United States Magistrate Judge

FINDINGS AND RECOMMENDATION Page 20